804 So.2d 1287 (2002)
PRECISION TUNE AUTO CARE, INC., Appellant,
v.
James E. RADCLIFFE, individually, and Performance Concepts, Inc., Appellees.
No. 4D00-2351.
District Court of Appeal of Florida, Fourth District.
February 6, 2002.
*1288 Glen R. Goldsmith, Miami, and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, West Palm Beach, for appellant.
John R. Hargrove and W. Kent Brown of Heinrich Gordon Hargrove Weihe & James, P.A., Fort Lauderdale, for appellees.

ON MOTION FOR REHEARING
WARNER, J.
We deny the appellant's motion for rehearing, withdraw our previously issued opinion, and substitute the following in its place.
When, after several discovery skirmishes, appellant, Precision Tune Auto Care, Inc. ("PTAC"), produced a corporate representative for deposition with only limited knowledge of the issues involved in the case, the trial court gave PTAC one last chance to comply and ordered the corporation to produce three specific representatives within five days or have its pleadings struck. Two of the witnesses appeared for the depositions, but PTAC failed to produce the third. The court struck its pleadings. We affirm, concluding that the court was well within its discretion to find a deliberate disregard of its order. We reverse, however, the judgment entered on the subsequent trial on damages because the trial court erred in submitting to the jury special damages not pled in the complaint.[1]

I. Order Striking Pleadings
This case involved disputes over an automotive service business franchise agreement. Appellees' (hereinafter referred to as Radcliffe) complaint contained several causes of action, and PTAC answered and filed a counterclaim. Initiating discovery, Radcliffe requested production of a wide range of documents in thirty-six categories. On September 22, 1999, the trial court sustained some objections to his request, overruled other objections, and gave PTAC thirty days to comply. When it did not produce the documents by October 23rd, Radcliffe moved for sanctions. PTAC subsequently filed an amended response in early November, attributing the *1289 untimely response to a paralegal's scheduling error.
As part of discovery concerning the counterclaim, Radcliffe noticed the deposition duces tecum of PTAC's corporate representative in Radcliffe's counsel's offices in Fort Lauderdale on September 2, 1999. He listed thirty-three areas of inquiry. PTAC responded by moving for a protective order requesting that the deposition be scheduled in Virginia because: (1) it did not maintain a corporate office in Florida; (2) all of the requested documents were located in Virginia at PTAC's headquarters; and (3) the parties allegedly agreed that all such activities would take place in Virginia. PTAC never requested a hearing or obtained the protective order from the court, and it failed to produce a representative at the deposition.
Radcliffe moved for sanctions for failure to appear. The court granted the motion and ordered PTAC to produce a corporate representative in Broward County within ten days. Radcliffe re-noticed the deposition accordingly for October 18th.
PTAC produced a corporate representative at that deposition who had very limited knowledge of the case, but identified three others with knowledge in the requested areas. Radcliffe again moved for sanctions, which the court granted on November 1, 1999, and ordered PTAC to produce those three individuals in Fort Lauderdale by Friday, November 5th, or its pleadings would be struck. Radcliffe re-noticed the depositions duces tecum for 11:00 a.m. on Friday, November 5th, and two of the three identified individuals appeared.
Elliot Bowytz, PTAC's Assistant General Counsel and Corporate Secretary, was present for his deposition, as was John Tarrant, one of the other witnesses listed in the court order. Mr. Bates, the third witness and a corporate officer, was not present because he was in Seattle, Washington, on previously scheduled company business. When the trial judge had entered the order on Monday, November 1st, Bates had not left for Seattle. In his deposition, Bowytz admitted that even though he knew of the order and the requirement that Bates be in Florida on November 5th or the corporation's pleadings would be struck, Bowytz did not impress upon Bates the importance of being in Fort Lauderdale on Friday and merely asked Bates when he could be available. Bates thought the following Friday was convenient for him. Bowytz admitted that the corporation was not in compliance with the court's order. The documents requested were also not present but were at PTAC's attorney's office. As PTAC previously noted in its amended response, Bowytz said that his paralegal had miscalendared the date when the documents should have been produced. Bowytz said he did not know why the documents were not at the deposition. PTAC's attorney stated that he had not been able to review them yet but would do so and produce them the next week at any rescheduled deposition.
Counsel for Radcliffe proceeded to take Bowytz's deposition until 5:15 p.m. that afternoon, when he terminated any further inquiry because of long-standing personal plans, of which he had previously informed PTAC's counsel. He also could no longer question Bowytz because he had not seen the documents which PTAC was required to produce. The two counsel then discussed the continuation of the depositions during the next week. However, counsel for Radcliffe could not determine which day would be best because he was unsure of his schedule and said he wanted to consider "subsequent undertakings." He still maintained that PTAC had not complied with the judge's order of November 1st.
*1290 Bowytz's deposition was not continued on Saturday, nor was Tarrant's deposition ever started. Instead, on Monday, Radcliffe filed a motion to strike PTAC's pleadings based upon Bates's nonappearance and the failure to produce the documents. The next week, all of the documents were produced. The trial court held a hearing on the motion to strike, but no transcript of it is part of the record. Nevertheless, the order recites that after considering Bowytz's deposition and hearing from counsel, the trial court struck the pleadings, detailing most of the above, and concluded that PTAC's actions were a "deliberate and contumacious disregard of the Court's previous orders," particularly the order requiring it to produce all three witnesses or its pleadings would be struck. The court ordered that the case be submitted to a jury on Radcliffe's damages only. The case ultimately proceeded to a jury trial, which resulted in a verdict and judgment of $840,093.86, from which PTAC filed its appeal.
In Mercer v. Raine, 443 So.2d 944, 945-46 (Fla.1983), the supreme court held that a trial court's order granting sanctions for violations of discovery rules should be reviewed using an abuse of discretion standard. Specifically, the court quoted from Farish v. Lum's Inc., 267 So.2d 325, 327-8 (Fla.1972):
The exercise of discretion by a trial judge who sees the parties first-hand and is more fully informed of the situation, is essential to the just and proper application of procedural rules. In the absence of facts showing an abuse of that discretion, the trial court's decision excusing, or refusing to excuse, noncompliance with rules ... must be affirmed.... It is the duty of the trial court, and not the appellate courts, to make that determination.
Mercer, 443 So.2d at 945. The court concluded: "[T]o justify reversal, it would have to be shown on appeal that the trial court clearly erred in its interpretation of the facts and the use of its judgment and not merely that the court, or another factfinder, might have made a different factual determination." Id. at 946.
Florida Rule of Civil Procedure 1.380 governs sanctions for failure to comply with discovery orders and provides that a trial court may enter "[a]n order striking out pleadings ... or rendering a judgment by default against the disobedient party." Fla. R. Civ. P. 1.380(b)(2)(C). "The purpose of reposing in the trial court the authority to enter a default is to ensure compliance with its order, not to punish or penalize." Garden-Aire Village Sea Haven, Inc. v. Decker, 433 So.2d 676, 677 (Fla. 4th DCA 1983). Generally,
the striking of pleadings or entering of a default for noncompliance with an order compelling discovery is the most severe of all sanctions which should be employed only in extreme circumstances. A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness.
Mercer, 443 So.2d at 946 (citations omitted). Moreover, the sanction "must be commensurate with the violation, since `justice prefers decisions based upon the merits' over determinations resulting from defaults or dismissals." Tubero v. Chapnich, 552 So.2d 932, 935 (Fla. 4th DCA 1989) (citations omitted), approved sub nom., Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271 (Fla.1990).
We have reviewed the record, including Bowytz's deposition. In our view, the court did not err in its interpretation of *1291 the facts or the use of its judgment. First, discovery had already been delayed considerably by PTAC's "foot dragging." When faced with an exact deadline, PTAC's corporate counsel failed to secure the attendance of one of the critical witnesses required to be present, even though he knew that the corporation's pleadings would be struck by the witness's failure to appear. From a reading of the deposition, it becomes clear that Bowytz simply disregarded the order of the trial court because it was inconvenient to the company's officer. Even knowing that the court required Bates's presence in Fort Lauderdale, PTAC did not have him break his previous business engagement. It does not appear that anyone ever contacted Radcliffe's counsel to let him know of the plans and the difficulty of getting Bates to Florida. Instead, they unilaterally decided to produce Bates on a date convenient to him.
Further, the documents were not produced at the corporate depositions, making those depositions much less useful. The documents were at PTAC's attorney's office, yet no one sought to bring them to the deposition, even though Radcliffe's counsel obviously needed them. While PTAC's counsel demanded time to go through them and determine whether any privileged documents should be noted, counsel still spoke of delivering them at the end of the following week. It appears throughout the deposition that PTAC's witness and attorney had a cavalier attitude regarding the necessity to comply with the court's orders. The trial court had a substantial basis for finding that PTAC exhibited deliberate and contumacious disregard for its order. See McCormick v. Lomar Indus., Inc., 612 So.2d 707, 708 (Fla. 4th DCA 1993). We therefore find no abuse of discretion in striking its pleadings.[2]

II. Damages Trial
While PTAC makes several claims with respect to damages, one in particular requires reversal. At trial, the court permitted Radcliffe to introduce evidence on "future contingent liability" damage claims which were outside the scope of the pleadings. Because we believe that these were special damages that were required to be pleaded in the complaint, the court erred in admitting this evidence and in submitting these damage claims to the jury.
This case involved a breach of a franchise agreement with respect to one of several PTAC stores (Store 1516) owned by Radcliffe in South Florida. After PTAC's pleadings were stricken and the allegations of Radcliffe's complaint stood as admitted, PTAC moved in limine to limit Radcliffe's damages to those arising from the specific store at issue because no special damages had been pled. PTAC informed the court that Radcliffe's expert would offer Radcliffe's future contingent liability on other franchises as damage evidence. Radcliffe was a guarantor on four other leases of franchises he previously owned but sold. If those leases went into default before this suit, Radcliffe could retake the lease and continue operating the franchise. Because of the breach on Store 1516, he claimed that PTAC would no longer permit him to reassume those *1292 franchises. Thus, he could be liable in the future on his four guarantees. According to the expert, the total present value of the exposure on all of the lease guarantees was $644,000. The court denied the motion both in limine and at trial. It also denied a directed verdict on the issue and denied a motion for new trial on that ground. The issue of the admissibility of the evidence was therefore preserved.
Rule 1.120(g) requires all special damages to be pled with specificity.
Special damages are considered to be the natural but not the necessary result of an alleged wrong or breach of contract. In other words, they are such damages as do not follow by implication of law merely upon proof of the breach. On the other hand, general damages are those which the law presumes actually and necessarily result from the alleged breach or wrong.
Augustine v. S. Bell Tel. & Tel. Co., 91 So.2d 320, 323 (Fla.1956). Based upon this definition, Radcliffe's contingent liability on the guarantees were special damages which may be the natural but not the necessary result of the breach of contract. Their contingent nature alone tells us that. Unless the purchasers of Radcliffe's other stores defaulted, Radcliffe would have no liability. As such, they had to be specially pleaded.
Evidence of special damages is inadmissible if those damages are not pled in the complaint. See Bialkowicz v. Pan Am. Condo. No. 3, Inc., 215 So.2d 767, 770 (Fla. 3d DCA 1968). Moreover, it is error to award damages on claims that are outside of the pleadings. See Hooters of Am., Inc. v. Carolina Wings, Inc., 655 So.2d 1231, 1233 (Fla. 1st DCA 1995). Therefore, the court erred in denying the motion in limine as well as the motion for directed verdict on the future contingent liability damages.
Although the jury awarded Radcliffe undifferentiated compensatory damages of $540,093.86 for his contract, good faith, and business interference claims, consideration of this issue is not barred by the two-issue rule, as Radcliffe contends. Recently, the first district explained the application of the rule in Johnson v. Thigpen, 788 So.2d 410 (Fla. 1st DCA 2001). That rule states:
[W]here there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced. The rule is based on the principle that reversal is improper where no error is found as to one of the issues that can independently support the jury's verdict.
Id. at 414 (quoting Barth v. Khubani, 748 So.2d 260, 261 (Fla.1999)). However, the first district noted that,
[T]he key to applying the two-issue rule is whether each claim has a separate measure of damages. First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla.1987). The two-issue rule applies where the finding of liability on one claim entitles the plaintiff to receive the total amount of damages attributable to both theories of liability. First Interstate, 511 So.2d at 538.
Id. at 415; see also Tomlian ex rel Tomlian v. Grenitz, 782 So.2d 905, 907 (Fla. 4th DCA), rev. granted sub. nom., Humana of Fla., Inc. v. Tomlian, 804 So.2d 329 (Fla. 2001).
The error in this case is not one regarding liability but of damages. Not only were there multiple claims of liability breach of contract, breach of implied covenant of fair dealing, and tortious interference separate measures of damages *1293 are associated with each claim. Moreover, the conduct constituting the tortious interference was not the same conduct as constituted the breach of contract. No economic damages were proven with respect to the tortious interference claim. Thus, despite Radcliffe's claim to the contrary, those tortious interference damages could not support the entire damage verdict. For these reasons, the two-issue rule does not bar consideration of this claim of error.
We need not address PTAC's contention of excessiveness of the punitive damage award, as that will necessarily have to be retried with other damage issues. For purposes of retrial, we affirm the denial of the directed verdict on the future lost profits, and we reject PTAC's election of remedies argument as precluding any breach of contract recovery.
For the foregoing reasons, we affirm the trial court's order striking PTAC's pleadings but reverse the final judgment and remand for a new trial on damages.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] We note that neither of appellant's counsel on this appeal represented PTAC during the depositions and discovery which led to the sanctions against it.
[2] The remaining arguments made by PTAC on this issue are not preserved as without a transcript of the hearing, there is no record they were made to the trial court. Although in a motion for rehearing PTAC did claim the striking of all pleadings was overbroad, the court denied rehearing. PTAC's claim is that the discovery only related to its counterclaim, and therefore, only the counterclaim should have been stricken. However, both the complaint and counterclaim alleged breaches of the franchise agreement. For that reason, the discovery may have produced information on both the claim and counterclaim.