PER CURIAM.
Robert Jones and Julie Jones [“the Joneses”] appeal a final judgment entered in favor of Publix Super Markets, Inc. [“Publix”] with respect to the negligence suit that the Joneses brought against Pub-lix after Mr. Jones fell in a Publix store. The Joneses argue that the trial court erred by (1) denying their motion to sanction Publix for its failure to timely disclose a key witness’s known address, (2) refusing to give a Valcin[1] instruction with respect to Publix’s alleged spoliation of a surveillance video, (3) excluding Mrs. Jones’s testimony about a statement made by a Publix employee that constituted an admission of a party opponent, and (4) denying their motion in limine to exclude evidence of Mr. Jones’s involvement in previous motor vehicle accidents.[2]
The Joneses filed a personal injury complaint against Publix on September 22, 2005, alleging that, on September 24, 2001, due to Publix’s negligent maintenance of a store’s premises, Mr. Jones slipped on a puddle of water in an aisle across from customer service and fell, sustaining significant injuries.[3] Within three months after the accident, counsel for the Joneses asked Publix for the identity of any witness, but Publix refused. Suit was filed and discovery was propounded to Publix. Publix responded that there was one witness, Ivan Martinez [“Martinez”], but that Publix did not have his address. Publix asserted work product for the statement that it had *1000 taken from Martinez. As the trial date approached, Publix’s witness list was amended several times, but each time, the address information was the same for Martinez — address unknown.
During the week prior to the trial, while the attorney handling the case for Publix was out of the country, his staff again amended the witness list. This time, however, an address for Martinez — 12745 Woodbury Glen Drive — appeared, and, this time, it was identified as the last known address. It turned out that the “last known” address finally given was the same address at which Martinez had continually resided since well before the accident in 2001. By 2008, however, when counsel for the Joneses contacted him at the Wood-bury Glen Drive address, he no longer recalled much about the events. Counsel for the Joneses filed a motion to strike Publix’s pleadings and motion for default for this discovery violation. At the first hearing, counsel for Publix told the trial judge that they had not known how to get in contact with Martinez, but the trial judge was skeptical. She ordered the matter to be further heard. She specifically ordered counsel for Publix to be prepared to explain when and where they got the address for Martinez. She also ordered that Publix bring to the hearing the statement taken from Martinez and any other discovery information pertaining to Martinez. In a remarkable understatement, the trial judge explained to counsel for Publix: “But if the victim doesn’t know how to get ahold of the witness and you do, and she asks and you don’t tell her, that’s a problem.”
At the hearing on September 22, 2008, counsel for Publix elaborately and repeatedly explained to the trial court that they “never had the address of Mr. Martinez” and “never did.” According to counsel, he had reviewed the incident report and all they had available for Martinez was a “then” phone number. This naturally led the trial judge to inquire how Publix obtained the address finally given in the recently amended witness list. Counsel responded that he did not have it. Instead, he or his staff just looked in the phone book, found three “Ivan Martinezes” listed, and gave them all to counsel for the Joneses. Counsel said: “We gave her everything it is that we could conceivably ever had or mustered.” Counsel for the Joneses corrected that statement, pointing out that all she had been given was the one newly disclosed “last known address.” She also pointed out that the phone number had never been disclosed. Obviously confused by the discrepancies between the attorneys’ wildly differing versions about what was known or not known and what had been disclosed, the trial judge took a recess to study the record.
When the hearing recommenced, counsel for Publix reiterated that he did not provide the address in them February 24, 2006, answers to interrogatories because “we don’t have it and never did.” Still dubious, the judge asked: “[S]o where did you get this address that came in four days ago?” The response from counsel was that the address they disclosed four days earlier was just one of a number of addresses found in the phone book, or other reference, for Ivan Martinez. Counsel said: “[Wjhen we disclose ‘a’ [sic] address, we’re not sure it’s ‘the’ address. We still don’t know.” Not so easily put off the point, the trial judge began to ask about the statement taken by Publix referenced in the original interrogatory answer as a possible source of the address. Counsel for Publix told the court that there was no statement from Martinez. Rather, a Specialty Risk Services representative had interviewed him, but it was not question/answer. It was a synopsis.
*1001 Still perplexed, the trial judge said: “You know, if I were in your position I wouldn’t just make up an address or pull one willy-nilly out of the phone book that I didn’t confirm his address after years of saying you don’t know how to reach him.” Counsel then elaborated once more: “Well, Your Honor, basically what happened was we were unable to locate Mr. Martinez, and so I basically told my staff to find every Ivan Martinez you can in the Central Florida area and we’ll send him [sic] a letter and see if we can get a response.... Those are the addresses that you’re seeing.” Soldiering on, the trial judge said: “Oh, there’s only one address that was given.... You’ve listed him as a witness and gave an address, and Plaintiffs’ counsel went crazy.” To that, Publix’s lawyer responded: “And what I’m telling the Court as an officer of the court is that I don’t have any idea of Mr. Martinez’s actual address.... It is a similarly-named gentleman for sure, but the alleged witness in this case I cannot attest to that one way or the other.”
This representation as an “officer of the court” seemed to satisfy the trial judge, and she asked counsel for the Joneses if that was “OK” with her. It was not. Counsel for the Joneses reminded the court that she had ordered the attorneys for Publix to bring both Martinez’s statement and the incident report to see if the address for Martinez was contained in either. Counsel for Publix responded: “If it will satisfy Your Honor about — this has come down to a credibility in [sic] counsel, integrity — .” Accordingly, two documents were adduced by counsel for Publix, marked as A and B, and handed to the trial judge. The record does not reflect how long the court perused the first document before she said: “[T]here is an address next to his name.” The address was 12745 Woodbury Glenn Drive,[4] the address that had finally appeared four days earlier on the amended witness list. The trial judge asked counsel for Publix for an explanation. He responded: ‘Your Honor, I can’t tell you anything other than what I have already told you. My contact with Mr. Martinez was unsuccessful.”
The trial court ordered the trial to be taken off the docket and said she was “too ticked off at several people” to proceed. She said that she was “a little miffed at them ... and it wouldn’t be fair to take up the motion to strike pleadings or affirmative defenses “right now either.” The Joneses filed an amended motion to strike Publix’s pleadings and affirmative defenses, and motion to issue a default judgment against Publix. The trial court entered an order denying the Joneses’ amended motion to strike Publix’s pleadings, without prejudice to the Joneses bringing the motion again. Instead, the trial court directed Publix to provide the Joneses with all of their incident reports and statements of witnesses. Publix provided the Joneses with the question and answer statement that Martinez gave to the claims representative. In his statement, Martinez described that Mr. Jones’s fall was due to water on the floor. He explained that there had been a young couple there from whom he believed Publix received contact information, and that it was the young lady who dropped a gallon of water on the floor.
Prior to trial, additional motions were filed. Publix filed a motion in limine to exclude a portion of Mrs. Jones’s expected testimony, specifically Mrs. Jones’s statement that when she spoke with an unidentified female Publix employee after Mr. Jones’s fall, the employee told her that she *1002 had already called someone to come and clean up the water.[5]
At trial, the trial court denied the Joneses’ renewed motion in limine to exclude evidence of prior accidents. It also ordered that Mrs. Jones would be precluded from testifying that when she reported Mr. Jones’s fall, a Publix employee informed her that they had already sent someone to clean up the water. The trial court decided that his disclosure was tardy. During the jury charge conference, the Joneses requested that a Valcin instruction be given with respect to Publix’s alleged spoliation of a surveillance videotape that captured Mr. Jones’s fall, which the trial court refused. The jury returned a verdict in favor of Publix. The Joneses filed motions for a new trial, which the trial court denied.
The Joneses’ first issue on appeal is whether the trial court erred by failing to sanction Publix for its failure to timely provide the address of Martinez, the independent witness, to Mr. Jones’s fall. In its response to the Joneses’ first motion for sanctions, Publix explained that it informed the Joneses, through interrogatory answers, that Martinez witnessed the accident, that “a recorded statement was taken” of Martinez, that Ivan Martinez’s statements were protected by the work product privilege, but that Martinez’s address was unknown. The statement that the address was unknown is manifestly untrue, as the address of Mr. Martinez appears on the face of the December 28, 2001, statement ultimately ordered disclosed to the Joneses.
Counsel for the Joneses asserted her belief that, since the very beginning, Pub-lix had the address and phone number of Martinez, a “very key witness,” but deliberately withheld it. Counsel for the Joneses pointed out that Publix’s privilege log indicated that Publix did an incident report on September 24, 2001 and took Martinez’s statement on December 28, 2001, and, therefore, Publix “had to get in touch with him somehow.” It was only through counsel for the Joneses persistence that defense counsel’s knowledge of the address and telephone number of Martinez finally were revealed.
On appeal, Publix offers no defense of its failure to disclose the address; what is more, it simply ignores the point. Publix instead basically argues that they supplied the name of the witness, Ivan Martinez, in 2008, and plaintiffs’ counsel should have found the address herself. Publix also claims that there is no proof that the Joneses’ case was harmed by the failure to disclose the address of Martinez since it is impossible for the Joneses to show when he forgot what he knew in 2001.[6]
In light of the record evidence, there is no doubt that, through its counsel, Publix violated the most basic rule of discovery by *1003 failing to timely disclose the address that was on its witness statement. The record also reveals that, with the benefit of the address finally provided in 2008, the Joneses were able to make contact with Martinez very soon. Unfortunately, Martinez testified that he no longer recalled the details of the incident. Based upon the record evidence, Publix’s late disclosure of Martinez’s address adversely impacted the Joneses’ case and their trial preparation. While Martinez was able to describe details of the incident shortly after it occurred, he was unable to do so by the time the Joneses were able to extract the contact information from Publix and get into contact with him. Importantly, the details described by Martinez suggest that Mr. Jones did fall due to water on the floor, that Publix had notice of the water spill prior to the fall, and that Publix likely had the contact information of the customer who spilled the water. Had the Joneses been provided with Martinez’s address when it was first requested and should have been provided, Martinez may have been able to give the Joneses the same or better details of the incident that he gave to Publix. If not, the Joneses would have had the opportunity under the rules of discovery to argue for disclosure of the work product to aid his recollection.
Although the question of imposition of sanctions for discovery violations and related attorney misconduct is a matter best left to the trial court’s discretion, that discretion is not without boundaries. Because Publix falsely maintained that it did not have contact information for Martinez and the excuses given by counsel for Pub-lix were incredible, it would have been error not to sanction Publix or its counsel for their misconduct. The trial court did require Publix to turn over to the Joneses their work product consisting of the witness statement of Martinez, but under the circumstances, the Joneses were entitled to that much under the rules of discovery. See Fla. R. Civ. P. 1.280(b)(8). For whatever reason never expressed in the record, in the face of multiple opportunities and considerable provocation, the trial court decided not to strike Publix’s pleadings for their counsel’s misconduct.[7] If the trial court had done so, that sanction would have had our support. Instead, as Appellants urge, there effectively was no sanction for failing to disclose the address. Although we are not in a position to dictate what sanction the trial court must impose, we can require that some sanction be imposed. At the very least, under the rules of discovery, the Joneses are entitled to reimbursement for the fees and costs of uncovering the concealment of the witness’s address and for obtaining the discovery that they were entitled to have. See Fla. R. Civ. P. 1.380.[8]
As we have already said about the willful non-disclosure of truthful facts in discovery: “A system that depends on an adversary’s ability to uncover falsehoods is doomed to failure, which is why this kind of conduct must be discouraged in the *1004 strongest possible way.” Cox v. Burke, 706 So.2d 43, 47 (Fla. 5th DCA 1998). If trial counsel cannot be relied on to comply with their ethical obligations for something as basic as the address of a witness, we will either have to do a better job of punishing misconduct or devise an entirely new system. On remand to the trial court, the trial court shall award to the Joneses their expenses associated with the failure of Publix to disclose the Martinez address. We further instruct the Clerk of this Court to forward this opinion to the Florida Bar for its examination of the conduct of counsel.
The Joneses also urge that the trial court erred by failing to give a Valcin instruction based on Publix’s spoliation of a video of Mr. Jones’s fall. The incident report that the trial court directed Publix to provide to the Joneses identifies Alan Milliron [“Milliron”] as the Publix manager who completed the report, and Melanie Goldstein as the person who told Milliron about the accident. The report contains several questions that are followed by “YES” and “NO” check boxes. The “NO” check box following the question, “DID ANY STORE ASSOCIATE SEE THE ACCIDENT,” has a check mark. The “YES” check box following the question, “SECURITY CAMERAS,” has a check mark. Beneath the check boxes pertaining to the security cameras question is the directive: “IF YES, FORWARD TAPE WITH REPORT.”
The Joneses, in a second request to produce dated April 15, 2009, asked Publix to provide them with video of the incident, as well as videos recorded of the front half of the Publix store surrounding the time frame of the incident. In its response to the request, Publix indicated that there was “NONE.”
Milliron testified during the trial that he had been the manager on duty at the store at the time of the incident. Milliron confirmed that he filled out the incident report on the day that the incident occurred. He indicated that his recollection of the incident was “[v]ery little” and that any recollection that he might have would probably be based upon the information in the incident report. Milliron also indicated that he did not witness Mr. Jones’s fall. When shown the incident report and asked if he had independent recollection of whether he forwarded a tape with the report, Milliron said: “No, I don’t.” Milli-ron confirmed that it would have been his “usual and customary way of doing things to pull the tape and send the tape with the report.... ” The following exchange transpired regarding Milliron having checked ‘YES” in response to the security cameras question on the incident report:
Q. Mr. Milliron, by checking yes where security cameras, that doesn’t state that there actually was a tape; is that correct? It’s just indicating that there were security cameras in existence?
[PLAINTIFFS’ COUNSEL]: Objection, leading.
THE COURT: Overruled.
A. I believe that means are there security cameras in the store—
[DEFENSE COUNSEL]:
Q. Right.
A. —in this particular store.
During the jury charge conference, the Joneses requested that a Valcin instruction be given with respect to Publix’s alleged spoliation of a surveillance video that captured Mr. Jones’s fall.
Publix claims no video ever existed, although no explanation is offered for the statement in the incident report that there were security cameras in the store. Presumably, there was a surveillance camera positioned to capture images at the loca *1005 tion where Mr. Jones happened to fall as well as at the location of the customer service desk. In light of the incident report, which directs any surveillance video to be forwarded with the report, the unexplained lack of any surveillance video is suspicious, especially given the wrongful withholding of the Martinez address. Nevertheless, we conclude that there simply are not enough facts available from which to conclude that a video existed that Publix caused to disappear. The denial of the Valcin instruction was not reversible error.
The Joneses next contend that the trial court reversibly erred by precluding Mrs. Jones from testifying about the admission by the Publix employee that they were aware of the spill. The trial court precluded Mrs. Jones from testifying that when she reported Mr. Jones’s fall, a Pub-lix employee informed her that they were aware of the water on the floor and had already sent someone to clean it up. The trial court refused to allow the Joneses to offer this testimony on the basis that their disclosure of the admission was tardy.
Publix argued below that the Joneses had failed to timely disclose the substance of this admission because the information should have been included in Mr. Jones’s initial answers to Publix’s interrogatories, and could have been provided on numerous occasions well in advance of the trial.
In its interrogatories to Mr. Jones, Pub-lix asked:
5. List the name, residence address, business address and telephone number of each person believed or known by you, your agents or attorneys to have heard or who is purported to have heard the Defendant make any statement, remark or comment concerning the accident described in the complaint and the substance of each statement, remark or comment.
Oddly, Publix did not request similar information in its interrogatories to Mrs. Jones. Mr. Jones answered: “None at this time. Investigation is continuing.” Shortly before trial, Mr. Jones did supplement his answer to interrogatory #5 as follows: “When my wife, Julie, went to the counter to report that I had fallen in some water that had been spilled on the floor, she was told that they had already sent somebody to clean it up.”
The Joneses deny that Mr. Jones was guilty of any misconduct or concealment. Both he and counsel denied knowing about the statement when he answered the interrogatory. They point out that Publix did not include a question in its interrogatories to Mrs. Jones that would have elicited the substance of the admission; that Mr. Jones had no knowledge of the statement; that Mrs. Jones did not assist Mr. Jones in answering the interrogatories that were directed to him; that Publix took their depositions and did not take the opportunity to ask Mrs. Jones any questions that would have elicited the substance of the admission; and that Mrs. Jones “being a layperson and unaware of the legal significance of the admission, did not understand it to be something she should volunteer.”
There is no evidence in the record to suggest that the Joneses, or their counsel, attempted to conceal the admission, or that Mr. Jones knew of the statement when he answered the interrogatory. As such, Mr. Jones did not have a duty to supplement his answer to the interrogatory. Fla. R. Civ. P. 1.280(e). Publix had ample opportunity to discover Mrs. Jones’s testimony. During Mrs. Jones’s deposition, she testified that she went to the service desk, told them her husband had fallen, and asked for them to get a manager. She also explained that she had spoken with an unidentified woman after Mr. Jones’s fall, *1006 and that the woman informed her that she had spilled water and that she and another individual had asked for someone to clean it up and were waiting for someone to clean up the water. The excluded admission by the Publix employee was significant testimony in support of the Joneses’ case, especially in light of their loss of the opportunity to conduct other discovery as the result of Publix’s concealment of information that would have allowed the Joneses the opportunity to locate fact witnesses with better recollection. The trial court’s error in excluding the testimony about the admission was not harmless. The Joneses are entitled to a new trial.
REVERSED and REMANDED.
GRIFFIN, LAWSON, JJ. and ZAMBRANO, R.A., Associate Judge, concur.

. Pub. Health Trust of Dade Cnty. v. Valcin, 507 So.2d 596 (Fla.1987).

. We affirm on the fourth issue without comment.

.Mrs. Jones also sought damages for the expenses for the care and treatment of her husband and for the loss of services, comfort, society and companionship.

. See infra at note 6.

. Publix also filed a notice of filing Mr. Jones's supplemental answers to interrogatories. In these supplemental answers to interrogatories, in response to being asked to provide the name and contact information of each person known to him to have heard Publix make any statement about the incident, as well as the substance of any such statement, he said: "When my wife, Julie, went to the counter to report that I had fallen in some water that had been spilled on the floor, she was told that they had already sent somebody to clean it up.”

. At oral argument, counsel for Publix suggested that there was no duty of disclosure because the address on the statement was "incorrect.” When pressed on this point, counsel explained that the address was "misspelled.” It turns out that the "incorrect” address on the statement was 12745 Wood-bury Glenn Drive, not 12745 Woodbury Glen Drive.

. The plaintiff’s bar of this State has long complained about the lack of symmetry or parity in sanctions imposed on defendants for fraud or other misconduct in litigation, suggesting that trial judges are more inclined to dismiss a plaintiff's unproven liability claim and eliminate a case from their docket than to expose a defendant to a trial and a significant award of damages based on misconduct rather than actual fault.

. Although we do not find an order disposing of the motion in the record, we note that the Joneses also asked the trial judge to strike Publix’s offers of settlement on the seemingly unassailable reasoning that, in the face of a wrongful failure to disclose the address of a key witness, such an offer could not meet the test of “good faith” and the factors set forth in section 768.79(7), Florida Statutes.