DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**REGINALD WILLIAMS** and **CHANEL WILLIAMS,**
Appellants,

v.

**PREPARED INSURANCE COMPANY,**
Appellee.

No. 4D18-692

[June 12, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. 15-14454 CACE (12).

Melissa A. Giasi of Sivyer Barlow & Watson, P.A., Tampa, for appellants.

Melinda S. Thornton and Scott A. Cole of Cole, Scott & Kissane, P.A., Miami, for appellee.

CIKLIN, J.

In this breach of homeowners insurance contract suit, Prepared Insurance Company ("the insurance company") was unable to procure the presence of an initial witness who was listed by Reginald and Chanel Williams ("the plaintiffs") but later omitted from their witness list. The insurance company, and ultimately the trial court, placed fault on the plaintiffs and their law firm for the witness's refusal to appear for deposition. As a sanction, the trial court (1) struck the plaintiffs' pleadings, and (2) imposed sanctions on the plaintiffs' law firm for bad faith litigation. We agree with the plaintiffs that the plaintiffs and their law firm cannot be held accountable for the failure of a non-party to appear for a deposition. Additionally, the trial court failed to identify any rule or court order that the plaintiffs and their attorneys failed to obey. We reverse.

After the plaintiffs allegedly suffered damage to their home due to a broken pipe, Chanel Williams was put into contact with Ramon Rodriguez,

whom she identified as a "public adjuster."[1]  The plaintiffs then retained the Strems Law Firm ("the law firm"), which sent the insurance company a letter advising of its retention and providing contact information for Rodriguez, whom the law firm identified as "our loss consultant."

The insurance company ultimately denied the plaintiffs' home damage claim based on its inability to "properly investigate" the incident. Thereupon the plaintiffs sued the insurance company for breach of contract.

Before the plaintiffs filed their trial witness list, the insurance company sought to depose Rodriguez.  It issued notices of deposition duces tecum directed to both Rodriguez and an unnamed corporate representative of the company with whom Rodriguez was affiliated, Let Us Claim Consultants, Inc.  Assuming that Rodriguez would appear for deposition as the corporate representative of Let Us Claim Consultants, Inc., the insurance company attempted service of Rodriguez at a Pembroke Pines address which turned out to be a UPS store.  Eventually, the insurance company obtained substitute service of Rodriguez at a Miramar address discovered by the insurance company through a search of Florida Division of Corporations records.

Rodriguez did not appear for the December 2015 deposition, and based on the insurance company's motions for rule to show cause, the trial court issued orders to show cause directed to Rodriguez and "the corporate representative" of Let Us Claim Consultants, Inc.  For case management purposes, the trial court directed the insurance company to re-notice the depositions and set the show cause hearing for a date after the depositions. The insurance company re-noticed the depositions for May 2016.  For this

---

[1] "Public adjuster" is defined as follows:

> A "public adjuster" is any person, except a duly licensed attorney at law as exempted under s. 626.860, who, for money, commission, or any other thing of value, prepares, completes, or files an insurance claim form for an insured or third-party claimant or who, for money, commission, or any other thing of value, acts on behalf of, or aids an insured or third-party claimant in negotiating for or effecting the settlement of a claim or claims for loss or damage covered by an insurance contract or who advertises for employment as an adjuster of such claims.  The term also includes any person who, for money, commission, or any other thing of value, solicits, investigates, or adjusts such claims on behalf of a public adjuster.

§ 626.854(1), Fla. Stat. (2015).

2

deposition, the insurance company obtained substitute service of Rodriguez at the UPS store in Pembroke Pines. Rodriguez did not appear for deposition.

The insurance company moved for sanctions and to strike the plaintiffs' breach of insurance contract pleadings, alleging in part that the plaintiffs failed to appear for deposition, failed to provide discovery, and that "their own Loss Consultants have failed to appear for deposition." The trial court entered an agreed order in which it provided that the motion was granted in part and denied in part and directed the plaintiffs as a sanction to reimburse the insurance company a small amount of money. The order did not identify the portions of the motion that were granted and denied.

The litigation stretched into 2017. As the trial date approached, the plaintiffs, in January of 2017, listed an engineer/general contractor as their expert witness and asserted that he would testify as to the cost and scope of repairs necessary based on his inspection of the property and information and photographs provided by the plaintiffs. In their trial witness list, the plaintiffs also named Rodriguez as a fact witness and provided Rodriguez's Pembroke Pines address.

In June, in response to a motion to show cause, the trial court entered an order directing Rodriguez and the corporate representative of Let Us Claim Consultants, Inc. to appear for deposition within twenty days or appear before the court on July 6 to explain why they should not be held in contempt. Also in June, the insurance company moved to compel a "better address and for sanctions." The insurance company asserted that in April, the plaintiffs provided the Pembroke Pines address for Rodriguez, but the insurance company's substitute service of Rodriguez at that address, which it had come to discover was a UPS store, had not resulted in Rodriguez appearing for deposition. The insurance company further alleged that the plaintiffs' listing of a UPS store address established that they "knowingly provided an address at which personal service cannot be effectuated, rather than providing a proper service address for their witness, and have further refused to produce their witness for deposition, requiring [the insurance company] to subpoena Ramon Rodriguez." The insurance company requested the court direct the plaintiffs to "provide a proper service address for Ramon Rodriguez, or produce [him] for deposition," and it sought fees and additional costs as a sanction.

A hearing was held, during which counsel for the plaintiffs asserted that the Pembroke Pines address it provided was the address on Rodriguez's estimate and that his law firm did not realize it was an incorrect address. Plaintiffs' counsel also stated that he had conducted a

3

Google search "last night" and found an Orlando address related to Let Us Claim Consultants, Inc.

The trial court directed plaintiffs' counsel to "provide [the insurance company] with an address within ten days from the date hereof and to call Mr. Rodriguez and say that there's a subpoena coming, and if he dodges it, then we'll take it up directly with him and he may be down here with BSO."

After the hearing, the plaintiffs and their law firm provided an Orlando address for Rodriguez. Of note, the plaintiffs also amended their witness list to omit Rodriguez.

Rodriguez's deposition was set for August 30. After unsuccessful attempts at service but before the deposition date, the insurance company moved to compel compliance, strike the plaintiffs' pleadings, and impose fees and costs as sanctions, alleging in part that the plaintiffs had "outright refused to produce Ramon Rodriguez . . . the person who was disclosed on [the law firm's] Letter of Representation as an agent of the firm . . . and a witness disclosed on the Plaintiff's witness list for trial." The insurance company asserted that its numerous attempts at service at the Orlando address were unsuccessful. It further asserted that the plaintiffs' law firm had not put Rodriguez on notice that he would be served at the Orlando address, as the process server's notes reflected that on one occasion, someone was home but would not answer the door, and on another occasion, Rodriguez's father told the process server that Rodriguez was working in Miami.

After the insurance company filed its motion to compel compliance, strike pleadings and impose sanctions and before the motion was heard, it obtained service on Rodriguez at the Orlando address on August 22. Predictably, Rodriguez again failed to appear. The insurance company filed a supplemental motion reciting that it served Rodriguez on August 22 and, in a separate motion, moved for an order to show cause directed to Rodriguez. In its motion, the insurance company pointed out that the plaintiffs and their law firm were arranging the scheduled deposition: "[Plaintiffs'] counsel provided a better address for Ramon Rodriguez and the deposition was coordinated and rescheduled for August 30, 2017."

Rodriguez failed to appear on August 30 and during a hearing held in early 2018, the trial court entertained the insurance company's motion to once again compel compliance, strike pleadings, and impose fees as sanctions.

Subsequently, the trial court entered a written order striking the plaintiffs' pleadings and imposing fees as sanctions against the plaintiffs' law firm. The court found that based on the letter of representation sent by the law firm to the insurance company, Rodriguez was an agent of the law firm. The court then recounted the history of the insurance company's attempts to depose Rodriguez, including its July 2017 order compelling the plaintiffs to provide another address for Rodriguez and to put Rodriguez on notice that he would be served with a subpoena. The court then held: "[The insurance company] has been attempting to obtain the deposition of witness Ramon Rodriguez, and has been prejudiced by the time, expense, and inability to prepare a proper defense at trial based on his failure to appear."

The trial court found that striking of the plaintiffs' pleadings was the only sufficient remedy, and it then addressed and applied the *Kozel*[2] factors first finding that plaintiffs' counsel and thus the plaintiffs' law firm of record was willfully disobedient:

> Strems Law Firm is experienced and has been handling this case since the claim was initially reported to [the insurance company]. They . . . have repeatedly failed and/or refused to (1) assist [the insurance company] in obtaining the deposition of Ramon Rodriguez, despite admonitions to warn Ramon Rodriguez that ignoring or dodging a subpoena would have consequences; (2) appear for duly noticed depositions; and (3) participate in meaningful discovery as it pertains to the loss consultant who was held out to be an agent of Strems Law Firm and the Plaintiffs.

The trial court observed that plaintiffs' counsel failed to appear at the August 30, 2017 deposition and that his non-appearance indicated plaintiffs' counsel "was aware, or strongly suspected, that the deposition would not proceed." Additionally, the court made a finding that counsel had previously been sanctioned:

> Although the Court has previously reserved as to the issue of the amount of fees and costs to be awarded, the Court has specifically granted a Motion to Compel Better Address and for Sanctions regarding Ramon Rodriguez. The Court has also found that Ramon Rodriguez, upon proper notice, should be compelled to come before the Court and demonstrate good cause for his failure to appear. Considering that Ramon

---

[2] *Kozel v. Ostendorf*, 629 So. 2d 817 (Fla. 1993).

Rodriguez has been held out as an agent of the Plaintiffs and Strems Law Firm, a sanction against him is a sanction against the Plaintiffs and Strems Law Firm.

Notably, as to the plaintiffs themselves, the trial court did not find that the plaintiffs were involved in any act of disobedience, but it observed that "the Plaintiffs[] retained Ramon Rodriguez as their public adjuster and failed to produce the public adjuster agreement and contract."

The trial court then found that the insurance company was prejudiced by the conduct of the plaintiffs and their law firm, as it had incurred significant fees and costs and had "been deprived of testimony by the first person who saw the loss after the Plaintiffs themselves." The court further found that the plaintiffs' counsel did not provide "reasonable justification" for "non-compliance." The court rejected the plaintiffs' and law firm's assertion that they provided all addresses they could find for Rodriguez. The trial court found that Rodriguez was an agent of the Strems law firm and summed up its findings by holding that the delay in the litigation negatively impacted the judicial administration of the case, as the matter had to be postponed. The court found that no other sanction but striking the pleadings would remedy the noncompliance. The court also imposed fees and costs, payable by the plaintiffs' law firm, for bad faith conduct.

In a separate order, the trial court granted the insurance company's second motion for better address, and it ordered the plaintiffs to provide a better address within ten days. The court ultimately entered a final judgment in favor of the insurance company.

On appeal, the plaintiffs argue that the order under our review should be reversed because the trial court failed to identify the order or rule the law firm failed to obey, erred in sanctioning them for conduct of a non-party, and made findings not supported by the record.

<u>Analysis</u>

"Florida Rule of Civil Procedure 1.380 governs sanctions for failure to comply with discovery orders and provides that a trial court may enter '[a]n order striking out pleadings,'" among other remedies. *Precision Tune Auto Care, Inc. v. Radcliffe*, 804 So. 2d 1287, 1290 (Fla. 4th DCA 2002) (alteration in original); *see also* Fla. R. Civ. P. 1.380. A trial court's imposition of sanctions for discovery violations is reviewed for an abuse of discretion. *See id.* "While sanctions are within a trial court's discretion, it is also well established that dismissing an action for failure to comply with orders compelling discovery is 'the most severe of all sanctions which

6

should be employed only in extreme circumstances.'" *Ham v. Dunmire*, 891 So. 2d 492, 495 (Fla. 2004) (quoting *Mercer v. Raine*, 443 So. 2d 944, 946 (Fla. 1983)). "[A] deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness." *Id.* (quoting *Mercer*, 443 So. 2d at 946).

To ensure that a party and an attorney of record's mere negligence during the discovery process does not result in dismissal of a complaint with prejudice, the Florida Supreme Court has developed a required procedure. In *Kozel v. Ostendorf*, 629 So. 2d 817 (Fla. 1993), the supreme court "articulated a test identifying six factors pertinent in the determination of whether a dismissal with prejudice is a warranted response to an attorney's behavior." *Ham*, 891 So. 2d at 496. The court must consider the following:

> 1) whether the attorney's disobedience was willful, deliberate, or contumacious, rather than an act of neglect or inexperience; 2) whether the attorney has been previously sanctioned; 3) whether the client was personally involved in the act of disobedience; 4) whether the delay prejudiced the opposing party through undue expense, loss of evidence, or in some other fashion; 5) whether the attorney offered reasonable justification for noncompliance; and 6) whether the delay created significant problems of judicial administration.

*Id.* (quoting *Kozel*, 629 So. 2d at 818). "Upon consideration of these factors, if a sanction less severe than dismissal with prejudice appears to be a viable alternative, the trial court should employ such an alternative." *Id.* (quoting *Kozel*, 629 So. 2d at 818).

Finding a wholesale dismissal was the only reasonable option, the trial court entered an order striking the plaintiffs' pleadings. The order under appeal contains 29 paragraphs of factual findings which essentially recount the history of the insurance company's attempts to depose Rodriguez, and Rodriguez's continued failure to appear for deposition even after he was subpoenaed.

The closest the trial court came to identifying a discovery violation related to the plaintiffs' law firm by finding that the law firm "ha[s] repeatedly failed and/or refused to (1) assist [the insurance company] in obtaining the deposition of Ramon Rodriguez, despite admonitions to warn

Ramon Rodriguez that ignoring or dodging a subpoena would have consequences; (2) appear for duly noticed depositions; and (3) participate in meaningful discovery as it pertains to the loss consultant who was held out to be an agent of [the law firm]."

As to the law firm, it appears the trial court based sanctions in part on the failure of the law firm to appear for Rodriguez's August deposition. But the court identified no authority requiring the law firm to appear. The court found that the law firm's waiver of appearance at the deposition indicated the law firm "was aware, or strongly suspected, that the deposition would not proceed," and that the law firm thus engaged in misconduct. Rodriguez exhibited a pattern of not appearing at depositions, so it was not necessarily unreasonable for the law firm to waive its appearance at the Orlando deposition. The law firm's election to not appear at the deposition does not equate to misconduct and the trial court's findings are not supported by the record.

The trial court also seemed to base sanctions on the failure of the law firm or plaintiffs to participate in meaningful discovery, but the court did not identify any discovery orders the plaintiffs violated. We have scoured the record and find nothing which would support the trial court's order or its decision to involuntarily dismiss the lawsuit.

To the extent the trial court found that the law firm failed to obey the court's order and inform Rodriguez that he was required to be available for a subpoena, the record reveals no evidence supporting such a finding.

Finally, to the extent the trial court was focused on the law firm's failure to produce Rodriguez for a deposition, the trial court did not cite to any authority requiring the law firm to do so and we ourselves are unaware of any. Rodriguez is not the type of witness a party is required to produce, such as an expert or corporate representative. *Cf. State Farm Mut. Auto. Ins. Co. v. Swindoll*, 54 So. 3d 548, 552 (Fla. 3d DCA 2011); *Precision Tune Auto Care*, 804 So. 2d at 1288. He is a fact witness. While sanctions can be based on a party's failure to provide an address for its witness, *see Jones v. Publix Super Markets, Inc.*, 114 So. 3d 998, 1004 (Fla. 5th DCA 2012), the trial court's findings reflect that the law firm *did* provide a valid address—the Orlando address—and that Rodriguez was served there. The trial court did not find that the Orlando address was not provided in a timely fashion.

The trial court also erred in basing a finding of noncompliance on a determination that Rodriguez was an agent of the law firm. The original letter of representation sent by the law firm to the insurance company

provided that the insurance company could speak to "Rodriguez or any of our agents" about specified topics. To the extent the letter of representation sent by the law firm to the insurance company gives the appearance of an agency relationship between the firm and Rodriguez, the evidence and record was insufficient to establish that Rodriguez's failure to appear for deposition fell within the scope of any such agency relationship.

Ironically, because the trial court's finding of a discovery violation was erroneous and unsupported by the record, there was never a need for the trial court to engage in a *Kozel* analysis in the first instance.

The trial court also sanctioned the plaintiffs by imposing fees and costs based on its inherent authority to award fees for bad faith litigation. The trial court's discretion to exercise its inherent authority to impose attorney's fees for bad faith conduct is reviewed for an abuse of discretion. *See Goldman v. Estate of Goldman*, 166 So. 3d 927, 929 (Fla. 3d DCA 2015). Aside from fees based on statute, rule, or contract, trial courts have the "inherent authority . . . to assess attorneys' fees for the misconduct of an attorney in the course of litigation." *Moakley v. Smallwood*, 826 So. 2d 221, 224 (Fla. 2002). "The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited egregious conduct or acted in bad faith." *Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998). But the "doctrine is rarely applicable," and is "reserved for those extreme cases where a party acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Foster v. Tourtellotte*, 704 F.2d 1109, 1111 (9th Cir. 1983)).

Because the trial court erred in striking the plaintiffs' pleadings based on their law firm's "failure" to produce Rodriguez for deposition, it follows that it also erred in imposing attorney's fees based on the same theory. The record does not support a finding of bad faith against the plaintiffs' law firm.

The plaintiffs also challenge the validity of the February 2018 order requiring them to provide a "better" address for Rodriguez. We agree with the plaintiffs that the trial court erred in entering the order, as the plaintiffs had already provided an address and Rodriguez was served at that address.

Based on the foregoing, we reverse and remand for further proceedings. The remaining issues raised on appeal are either moot, unpreserved, or without merit and we decline to address them.

*Reversed and remanded.*

TAYLOR and LEVINE, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***