**IC INDUSTRIES, Plaintiff,**

**v.**

**I.C. INDUSTRIES, Defendant.**

**No. 80–275–Orl–Civ–R.**

United States District Court,
M.D. Florida,
Orlando Division.

Dec. 27, 1983.

Henry S. Kaplan and Evan M. Kent of Dressler, Goldsmith, Shore, Sutker & Milnamow, Ltd., Lawrence Lawless, Chicago, Ill., James F. Page, Jr. and Stephen A. Hilger of Gray, Harris & Robinson, Orlando, Fla., for plaintiff.

Herbert L. Allen of Duckworth, Allen, Dyer & Pettis, Orlando, Fla., for defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

JOHN A. REED, Jr., District Judge.

Based on the evidence presented at the trial of this case, the court makes the following:

### Findings of Fact

1. The plaintiff is a holding company which owns six major subsidiaries. They are: Pet Incorporated, acquired in 1978;

Pepsi Cola General Bottlers, Inc., acquired in 1970; Abex Corporation, acquired in 1968; Midas International Corporation, acquired in 1972; Illinois Central Gulf Railroad, acquired in 1972, and The Hussman Corporation, acquired in 1978. The activities of these subsidiaries are described in "fact files" introduced in evidence as a composite exhibit. *See* plaintiff's exhibit 6 and particularly pages 30–31 of the 1983 edition.

2. The name of the plaintiff before 1975 was "Illinois Central Industries, Inc.". That name was formally changed in 1975 to "IC Industries, Inc.". Prior to the name change, the plaintiff used the name "IC Industries" as a trade name and as a trade and service mark. See for example the letter bearing date 6 September 1972 from the plaintiff's chief executive officer to the former shareholders of Illinois Central Railroad welcoming them to the "IC Industries" family. (Plaintiff's exhibit 9).

3. The name "IC Industries" has been registered by the plaintiff as a trade or a service mark to identify a broad array of products and services manufactured and sold by the subsidiaries of the plaintiff. (Plaintiff's exhibit 55–68).

4. Plaintiff's registration no. 1095465 (contained in plaintiff's exhibit 55) indicates that the mark was first used as a service mark in 1962 in connection with railway and motor truck transportation services.

5. The name "IC Industries" was derived from the words "Illinois Central" in the defendant's former trade name. The name "IC Industries" has been used by the plaintiff as a trademark to identify the goods of its subsidiaries. The mark has been placed directly on products of the subsidiaries and on the advertising therefor as well as on containers of the subsidiaries' various products. *See* plaintiff's exhibit 36, § 4.5; plaintiff's exhibit 37b (packaging for products from Pet Inc.); plaintiff's exhibits 39a (stationery), 39b and 40b (soft drink containers) and plaintiff's exhibit 41b (which includes a name plate designed to be affixed directly to an aircraft access ramp).

6. From 1972 to 1974 the plaintiff used the name "IC Industries" in connection with the sale of interest in real estate in Broward County, Florida. *See* plaintiff's exhibit 49–51. Similar use of the name was made in 1975 or 1976 in connection with an industrial park in Broward County, Florida.

7. Since 1973 the plaintiff has extensively advertised its name in connection with the name of its subsidiaries and their goods and services. *See* plaintiff's exhibit 10, 13, 16, 20, 31, 34, 35 and 35(a). Plaintiff's advertisements have appeared in various publications including the *Wall Street Journal, Fortune, Barrons,* and *Pensions & Investment Age.* In addition the plaintiff's name and its relation to its subsidiaries and their products is exposed to the public through the distribution of about 10,000 annual reports each year to the customers of plaintiff's subsidiaries, banks and portfolio managers. Approximately 100,000 of plaintiff's annual reports are printed in English for distribution in the United States and 25,000 are printed in French for distribution in Europe. From 1975 through 1983, the plaintiff has budgeted and spent approximately $5,000,000.00 for advertising.

8. After the plaintiff's name was changed in 1975, the plaintiff standardized its use of the name "IC Industries" by the adoption of guidelines which the plaintiff and its subsidiaries follow for purposes of advertising and identification. *See* plaintiff's exhibit 36.

9. Lawrence Lawless, a corporate counsel for the plaintiff, testified that he is unaware of any "overlapping customers" of the parties or any "overlapping advertising media". Jerome Glass, a regional manager with the Aerospace Division of Abex Inc., did testify that Abex sells some of its products to the Martin Marietta Corporation in Orlando, Florida. These products are used by Martin on what is known as the Patriarch missile system. The defendant's President, Seymore Lenz, testified that the defendant also sells to Martin Marietta Corporation but defendant's products do not compete with those sold to Martin

by the plaintiff. The evidence before the court does not indicate that the plaintiff and the defendant compete with one another or sell to the same customers, with the exception noted above. The evidence likewise indicates and the court finds that the parties do not advertise in the same media.

10. The defendant is a relatively small Florida corporation which began its corporate existence in May 1976 under the name "I.C. Industries Inc." The defendant has seven employees and, in 1982, sales of $250,000.00. The defendant manufactures equipment to test the functioning of integrated circuits. The defendant's first sales in commerce under the trademark of "I.C. Industries, Inc." occurred in late 1976 after plaintiff's first use of its trademark and name in Florida. A portion of the defendant's product line is illustrated in defendant's exhibit 16, an advertising brochure published by the defendant. Defendant's exhibits 7, 8, 9, 10, 12 and 13 are also product bulletins which the defendant has used for advertising purposes since 1977. In these bulletins, the defendant is variously referred to as "ici", "I.C. Industries, Inc.", and "IC Industries Incorporated". Defendant's exhibit 6 is an advertising piece which is currently in use by the defendant. It shows in the lower righthand corner a Probe Card which has embossed on it the name "IC Industries Inc."

11. The defendant's equipment is generally marketed by direct negotiation with a consumer, but some of the defendant's sales are effected through manufacturers representatives and, in Europe, through distributors. About fifty percent of the defendant's products are custom made for a specific consumer. The defendant sells throughout the world, but most of its domestic sales are to customers in California, New England and Texas. Approximately one percent of the defendant's sales are to Florida customers. The defendant has no specific plans for expanding its business beyond the manufacture of test equipment for electronic circuits.

12. The defendant advertises through technical trade journals. An example is defendant's exhibit 17, the April 1983 edition of Electronic Packaging & Production. This magazine contains an article dealing with test probes. On the second page of the article under photo no. 4 a reference to the defendant is found in the following language:

> Laser trimming is the most common user or probing in hybrid circuit manufacturing at present. Pictured is a card with adjustable probes *manufactured by IC Industries* for use on an ESI laser trimmer. (Emphasis added.)

The style in which IC Industries is written is quite similar to the style utilized by the plaintiff to publish its mark. *See* plaintiff's exhibit 36 for comparison.

13. Seymore Lenz organized and is president of the defendant. Mr. Lenz initially desired to call the defendant "Integrated Circuits Industries", but avoided that name upon learning that it was in use by another company. Mr. Lenz adopted the name "I.C. Industries, Inc." without knowledge the name was in use by the plaintiff. The "I.C." in the defendant's name was chosen by Mr. Lenz because he believed those letters are widely understood by people in the microelectronics industry to refer to integrated circuits. Mr. Lenz learned of the plaintiff's name two to three months after the defendant was incorporated. He did not change the defendant's name upon learning of the plaintiff because he did not believe there was any likelihood of confusion. Mr. Lenz testified and the court finds that he adopted the name "I.C. Industries, Inc." without any intent to trade upon or denigrate the good will of the plaintiff.

14. In 1978 the defendant attempted to register as a trademark the name "I.C. Industries" in conjunction with the initials "ICI". *See* plaintiff's exhibit 50. On 23 May 1979 an examiner in the Patent and Trademark Office advised the defendant by an office action dated 23 May 1979:

> Applicant is advised that an application is pending in this Office for the registration of a mark which so resembles applicant's mark as to be likely, as used in connec-

tion with the goods and/or services, to cause confusion, or to cause mistake, or to deceive. Since the filing date of the instant application is subsequent to the filing date of the other pending application, the latter, if and when it matures into a registration, will be cited against the instant application.

The subject of the examiner's reference was an application which had theretofore been filed by the plaintiff. *See* plaintiff's exhibit 61.

15. The defendant filed a new application for the trademark using the letters "ICI" in a stylized form. See defendant's exhibit 51. This application generated an opposition from Imperial Chemical Industries Ltd. which had registered the mark "I.C.I." in 1957. In order to settle its dispute with Imperial Chemical, the defendant has agreed to use the letters ICI together with another word or letter to distinguish its mark from that of Imperial.

16. The plaintiff has admitted by a response to a request for admission filed on 3 February 1982 that it (the plaintiff) has no evidence of actual confusion caused by the defendant's use of the name "I.C. Industries, Inc." The plaintiff also admitted that neither it nor its subsidiaries manufacture test probes for electronic equipment.

17. Lawrence Lawless testified that he knows of no company other than the plaintiff and defendant which uses the name "IC Industries Inc." as a trade name or mark.

18. The plaintiff's mark has no inherent relationship to the plaintiff's products and services. The mark does not suggest or describe any product or service offered by the plaintiff, although the letters "IC" in isolation may to some persons involved in the electronics industry suggest an integrated circuit. Since 1975 the plaintiff has spent large sums of money advertising its trademark and its relationship to its various subsidiaries. The evidence indicates no third party use of the plaintiff's mark. The plaintiff's mark is a strong mark. *See John H. Harland Co. v. Clarke Checks Inc.*, 711 F.2d 966 (11th Cir.1983),

and 3A Callmann, *Unfair Competition Trademarks and Monopolies*. The plaintiff's and defendant's marks are virtually indistinguishable in design and are indistinguishable in sound. This was conceded by defense counsel in his closing argument. A member of the public seeing a product such as that depicted in the lower right quarter of defendant's exhibit 6 could reasonably assume the plaintiff was the source of the product. The plaintiff and the defendant do not manufacture similar products. The plaintiff, however, through its subsidiaries makes a vast array of products and is known to some members of the public as a broadly based holding company. At least one trademark examiner has expressed the opinion that the use of the mark "I.C. Industries" by the defendant would likely cause confusion, mistake or deception. *See* defendant's exhibit 50. The plaintiff and defendant do not generally sell to the same customers or utilize common advertising media. Likewise they do not sell through the same outlets. Despite the foregoing and the lack of any evidence showing intent on the defendant's part to deceive, the court finds that the defendant's continued use of the name "I.C. Industries" or any similar series of words and letters as a trademark or trade name is likely to cause mistake or confusion in the mind of at least some members of the public as to the source of the defendant's products or the corporate relationship between the plaintiff and the defendant or both. This conclusion is an inference drawn primarily from the evidence relating to the strength of the plaintiff's mark, the broad variety of products and services offered by the plaintiff, and the virtual identity in appearance of the competing marks. It is corroborated by the opinion of the trademark examiner cited supra.

### Conclusions of Law

1. This court has subject matter jurisdiction over the plaintiff's claims by reason of the provisions of 15 U.S.C. § 1121, 28 U.S.C. § 1338, and the doctrine of pendent jurisdiction.

2. Under §§ 1114 and 1116 of Title 15, United States Code, the plaintiff is entitled to injunctive relief on its claim asserted in Count One of the complaint for trademark and service mark infringement. *See John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966 (11th Cir.1983), and *Burger King Corp. v. Mason,* 710 F.2d 1480 (11th Cir.. 1983).

3. Under the common law of unfair competition and under the provisions of § 1125, Title 15, U.S.Code, the plaintiff is entitled to similar relief on the claim asserted in Counts Two and Three of the complaint. *See Sun-Fun Products, Inc. v. Suntan Research & Development,* 656 F.2d 186 (5th Cir. Unit B, 1981), and *Chevron Chemical Company v. Voluntary Group Purchasing Groups,* 659 F.2d 695 (5th Cir. Unit A, 1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982).

4. On the claim asserted in Count Four of the complaint the plaintiff is also entitled to injunctive relief under the provisions of § 495.151, *Fla.Stat.*1983. *See Safeway Stores Inc. v. Safeway Discount Drugs,* 675 F.2d 1160, 1167 (11th Cir.1982), and *Community Federal Sav. and Loan Ass'n v. Orondorff,* 678 F.2d 1034, 1035 (11th Cir.1982).

5. The plaintiff is not entitled to relief on the claim asserted in Count Five of the complaint. It is the opinion of this court that trademark and trade name infringement is not actionable under § 501.-211, *Fla.Stat.*1983. *See* §§ 501.212(3) and 501.203(1), *Fla.Stat.*1983.

Therefore, it is

ORDERED:

1. The defendant's motion for judgment at the close of the plaintiff's case is granted as to Count Five of the complaint. The motion is denied as to the claims asserted in Counts One through Four of the complaint.

2. Within thirty days from the date of this order, counsel for the plaintiff is directed to submit to the court a proposed final judgment for injunctive relief. To minimize the impact of the judgment, it should provide a reasonable period within which the defendant shall terminate the use of the name and mark "I.C. Industries" and any confusingly similar name or mark. Prior to the submission of the proposed final judgment, the attorneys for the parties shall confer in a good faith attempt to agree on the form of the final judgment. When the proposed form is submitted to the court, it shall be accompanied by a stipulation indicating such agreement or a specification of defendant's objection(s).

3. If the plaintiff deems itself entitled to a judgment for costs or an award of attorneys' fees, or both, the plaintiff shall file a bill of costs within twenty days after the date of this order. If applicable, plaintiff within the same period shall file a motion for attorneys' fees with supporting affidavits in conformity with *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).