Rafael KLINGER a/k/a Ed Anger, Plaintiff,

v.

WEEKLY WORLD NEWS, INC., Defendant.

No. 89–8504–CIV.

United States District Court, S.D. Florida.

Oct. 11, 1990.

Michael C. Cesarano, for Klinger.

L. Martin Reeder, Jr., for Weekly World News, Inc.

### ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon the defendant Weekly World News, Inc.'s Motion To Dismiss Count IV of the plaintiff Klinger's complaint and Klinger's Motion To Dismiss Count V of Weekly World News, Inc.'s counterclaim. The motions are now ripe for disposition.

### I. FACTS

Rafael Klinger is a writer who has brought suit against his former employer, the Weekly World News, Inc.—a Florida corporation which publishes a nationally distributed, weekly newspaper under the name *Weekly World News*. The suit arises out of a dispute over the plaintiff's essays and editorial materials which he published for many years in the Weekly World News under the pseudonym of Ed Anger.

The complaint alleges that the plaintiff and the defendant had an agreement that the defendant paper would publish the plaintiff's essays under the tradenames "Ed Anger," "Ed Anger's America," and "My America by Ed Anger." The defendant did publish the essays up until 1987,

at which time the Weekly World News notified the plaintiff that it was no longer going to publish his essays. In late May or early June of 1989 the plaintiff terminated his employment with the defendant.

Allegedly, the defendant newspaper then began to publish a series of articles under the tradenames "Ed Anger," "Ed Anger's America," and "My America By Ed Anger," each of which the plaintiff claims to have the rights to. The plaintiff alleges that the defendant has advertised its articles under these names and has sold or offered to sell its publications containing these articles in interstate commerce. Additionally, the plaintiff claims that the defendant's use of the names has created deception, confusion, and mistake on the part of the public. This deception and confusion allegedly has harmed the plaintiff by preventing him from exploiting the tradenames, primarily because the confusion has caused persons otherwise willing to publish the plaintiff's works to refrain from doing so. In essence, the plaintiff is claiming that the defendant is deceptively selling newspapers by representing its articles as true "Ed Anger" articles when they really are not.

The plaintiff's complaint primarily alleges federal trademark violations. However, it includes a few pendent state claims, most significantly count IV which alleges a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla.Stat. § 501.201, *et seq.* The defendant has filed a counterclaim alleging, *inter alia,* copyright infringement.

## II. MOTIONS

The defendant has moved to dismiss Count IV of the plaintiff's complaint primarily on the ground that the count fails to state a claim under the Florida Deceptive and Unfair Trade Practices Act. The plaintiff/counterdefendant has moved to dismiss Count V of the defendant's counterclaim for failure to state a claim of copyright infringement. The Court will address these motions one at a time.

## III. DISCUSSION

### A. Standard of Review

A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Staton v. Wainwright,* 665 F.2d 686 (5th Cir.), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1757, 72 L.Ed.2d 166 (1982). The allegations of the claim must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

### B. Defendant's Motion To Dismiss Count IV of Plaintiff's Complaint

Florida's Deceptive and Unfair Trade Practices Act ("Act") primarily proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla.Stat. § 501.204(1). To enforce this proscription, the Act has created a private cause of action for damages, Fla.Stat. § 501.211(2), and for declaratory or injunctive relief, Fla.Stat. § 501.211(1). Section 501.211(1), which creates the cause of action for declaratory or injunctive relief, provides in pertinent part:

> Without regard to any other remedy or relief to which a person is entitled, *anyone aggrieved* by a violation of this part [including § 501.204(1) ] may bring an action to obtain a declaratory judgment that an act or practice violates this part and to *enjoin* a supplier who has violated, is violating, or is otherwise likely to violate this part. (emphasis added).[1]

The plaintiff concedes that in count IV he is not seeking damages under § 501.211(2) but merely injunctive relief un-

Florida Statute § 501.203(3) defines a "supplier" as a "seller, lessor, assignor, or other person who regularly solicits, engages in, or enforces consumer transactions...." Section 501.203(1) defines a "consumer transaction" to include a "sale ... of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family or household...." Weekly World News, Inc.'s sale of newspapers is sufficient to make it a "supplier" as that term is used in Fla.Stat. § 501.211(1).

der § 501.211(1). Specifically, the plaintiff is attempting to enjoin the defendant from engaging in deceptive actions which allegedly violate the Act. To state a claim for injunctive relief, the plain language of the statute requires a plaintiff to allege that the defendant engaged in a deceptive act or practice in trade or commerce, § 501.204(1), and that the plaintiff be a person "aggrieved" by the deceptive act or practice, § 501.211(1).

■ The Court is of the belief that the plaintiff has stated a claim for injunctive relief under the Act. First, the plaintiff has alleged that the defendant's publication of the essays under the name "Ed Anger" has created deception, confusion, and mistake on the part of the public. *See* Klinger's Complaint at pars. 10 & 11. Further, the defendant's sale of a newspaper certainly would constitute engaging in "trade or commerce" as those terms are used in the Act. Consequently, the plaintiff's complaint has alleged a violation of § 501.204(1).

■ Having concluded that the complaint has alleged a violation of the Act, the next question becomes whether the defendant is entitled to avail himself of the mechanisms in § 501.211 of the Act which provide a means of redress. The Court is of the opinion that he may. Section 501.211(1) provides that *"anyone aggrieved* by a violation of this Act" may obtain an injunction. Unlike § 501.211(2) which only entitles "consumers" to pursue damage actions for violations of the Act, § 501.211(1) extends itself to "anyone aggrieved." Without any modifying language, the plain language of the statute includes a broader class of complainants than merely "consumers." *General Time Corporation v. Big Ben Corp., et al.,* 1 U.S.P.Q.2d (BNA) 1239, 1986 Westlaw database 15636 (S.D. Fla.1986) (Davis, J.). It appears that the legislature's choice of the word "anyone" in § 501.211(1), instead of the word "consumer" which it used in § 501.211(2), seems deliberate and implies that the scope of the injunctive remedy is greater than the actual damage remedy. *Id. See also K Mart v. Cartier, Inc.,* 486 U.S. 281, 291–92,

108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988) (noting that a court's construction of a statute should end with the statutory language where that language is clear and unambiguous). Accordingly, the defendant's argument that the plaintiff is not entitled to avail himself of the protections of the Act because the plaintiff is not a "consumer" must fail.

■ The plaintiff may state a claim for injunctive relief if he alleges that he was "aggrieved" by the defendant's violation of the Act. It appears that the plaintiff has done just that. The plaintiff's complaint alleges that because of the defendant's deceptive use of the tradenames, allegedly a violation of § 501.204(1), the plaintiff has lost business opportunity—i.e., publishing opportunities. A professional writer's loss of his ability to publish clearly constitutes an injury sufficient to permit him to resort to the injunctive remedies of the statute.

■ The defendant also has argued that Fla.Stat. § 501.212(3) prevents the plaintiff from alleging a violation of the Act. Section 501.212(3) states that the Act does not apply to:

> A claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction.

That section, however, does not prevent the plaintiff from adequately stating his claim.

First, nothing in the language of § 501.212(3) appears to prevent a plaintiff from seeking an injunction to prevent the continued infringement of its trademark. *General Time Corp.,* 1 U.S.P.Q.2d at n. 2. Moreover, even if this Court were to construe the language of § 501.212(3) to be applicable to the present situation, that section's plain language requires a conclusion that the Act applies to redress the injury alleged here. The plaintiff has sought injunctive relief to prevent future injury to his property—the trademark name "Ed Anger." As the newspaper was selling the Ed Anger articles in the course of its business, the trademark property obviously was the subject of the consumer transaction involved here—the sale of the newspa-

per. As a result, § 501.212(3) would not preclude the plaintiff from obtaining his relief because that section implicitly provides that the Act applies where the damaged property *is* the subject of the consumer transaction. The section's language only prevents resort to the protections of the Act where the damage alleged is to property *"other* than the property that is the subject of the consumer transaction." Fla.Stat. § 501.212(3) (emphasis added).

■ The defendant also contends that the Act simply does not apply to actions for trademark infringement. The defendant, however, appears to have placed too much reliance on a district court decision in which the court summarily, and without explanation, concluded that claims for trademark and tradename infringement are not actionable under the Act. *See IC Industries v. I.C. Industries,* 595 F.Supp. 340, 344 (M.D. Fla.1983). It may be true that the Act should not be used as the primary means of redressing trademark infringement. However, when looking at the statute there simply is no good reason why its protections should not extend to those who are aggrieved or damaged because of someone's deceptive use of a trademark or tradename. *Cf. General Time Corp,* 1 U.S.P.Q.2d (BNA) 1239 (noting that the extension of the Act's scope beyond traditional consumer transactions would not be unique); Annotation, *Practices Forbidden by State Deceptive Trade Practice and Consumer Protection Acts,* 89 A.L.R.3d 449, 468 (citing numerous cases where courts have held that the use of tradenames constituted a violation of a deceptive trade practice statute or consumer protection act). Therefore, the defendant's argument that the Act never applies when a tradename or trademark was the device used to effect the deception also is without merit.

In sum, the Court holds that the plaintiff has stated a claim upon which relief can be granted under Florida's Deceptive and Un-

fair Trade Practices Act and, as a result, the defendant's motion to dismiss count IV of the plaintiff's complaint is denied.

## C. Plaintiff's Motion To Dismiss Count V of Counterclaim

The defendant Weekly World News, Inc. has filed a counterclaim against the plaintiff. Count V of the counterclaim alleges that the plaintiff has infringed the defendant/counterplaintiff's copyright in the literary character Ed Anger.

■ The plaintiff has moved to dismiss the copyright infringement count on the ground that it fails to state a claim upon which relief can be granted. To state a claim for copyright infringement a complaint must allege: (1) the specific original work that is the subject of the copyright claim; (2) that the plaintiff owns the copyright in the work; (3) that the work in question has been registered in compliance with the statute; and (4) by what acts and during what time the defendant has infringed the copyright. *Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D.Pa.), *aff'd mem.,* 612 F.2d 572 (3d Cir.1979).

■ The counterclaim has alleged the necessary elements to state a claim for copyright infringement. First, the counterclaim has pointed to the specific, original work that is the subject of the claim in that it has asserted infringement of the character "Ed Anger" as that character has been developed in approximately 450 of the defendant's copyrighted publications which included "Ed Anger" essays or editorials. *See* 1 M. NIMMER, NIMMER ON COPYRIGHT, § 2.12 (1990) (noting that characters are entitled to copyright protection); *Universal City Studios, Inc. v. J.A.R. Sales, Inc.,* 216 U.S.P.Q. (BNA) 679 (C.D. Cal.1982) (holding that the character "E.T." in the motion picture *E.T. ·The Extra–Terrestrial,* itself a copyrighted work, contains unique elements of expression and is protectable under the Copyright Act).[2]

---

**2.** There may be a significant distinction between the copyright protection which extends to literary characters and that which extends to characters within those types of works which allow the character to be perceived visually, such as a comic strip character. *Compare Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 755 (9th Cir.1978) (holding that comic book characters,

The counterclaim also clearly has alleged that the defendant *owns* the copyright in the work. See par. 60. Paragraph 59, meanwhile, includes the necessary allegation that the work in question has been registered in compliance with the Copyright Act. Finally, paragraphs 33 and 63 of the counterclaim clearly allege the acts by which the plaintiff is infringing the defendant's rights in the literary character.[3] In sum, the counterclaim appears to have alleged all elements necessary to state a claim for copyright infringement. Consequently, Klinger's motion to dismiss count V of the counterclaim is denied.

Accordingly, having reviewed the motions and the record, and being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED as follows:

(1) Weekly World News, Inc.'s Motion to Dismiss Count IV of Klinger's complaint is DENIED;

(2) Klinger's Motion To Dismiss Count V of Weekly World News, Inc.'s counterclaim is DENIED;

(3) Weekly World News, Inc. shall serve an answer to Count IV within 20 days of receipt of this order;

(4) Klinger shall serve a reply to the counterclaim within 20 days of receipt of this order.

DONE AND ORDERED.

---

primarily because they have physical as well as conceptual qualities, are protectable), *cert. denied sub nom. O'Neill v. Walt Disney Productions,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979) *with Warner Bros. Pictures, Inc. v. Columbia Broadcasting Sys. Inc.,* 216 F.2d 945 (9th Cir.1954) (noting, apparently in *dicta,* that a literary character—in that case the fictional detective Sam Spade—was not protectable), *cert. denied,* 348 U.S. 971, 75 S.Ct. 532, 99 L.Ed. 756

(1955). However, the parties have not briefed the issue. Therefore, consideration of the distinction is inappropriate at this time.

**3.** Paragraph 63 also alleges that the literary character which the plaintiff is now marketing is substantially similar to the defendant's character and that the plaintiff had access to the "Ed Anger" character.