IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SHAWN AHEARN, ON
BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY
SITUATED,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-4256

     Appellant,

v.

MAYO CLINIC, A FLORIDA
CORPORATION; MAYO
CLINIC JACKSONVILLE, A
FLORIDA CORPORATION,

     Appellees.

_____/

Opinion filed November 6, 2015.

An appeal from the Circuit Court for Duval County.
Virginia B. Norton, Judge.

Bryan S. Gowdy of Creedy and Gowdy, P.A., Jacksonville, for Appellant.

John A. Tucker of Foley & Lardner, LLP, Jacksonville; James A. McKee and
Benjamin J. Grossman of Foley & Lardner, LLP, Tallahassee; Marjorie C. Allen of
Mayo Clinic Jacksonville, Jacksonville, for Appellees.

BILBREY, J.

     Appellant, Shawn Ahearn, individually and as a putative class

representative, appeals the final summary judgment issued by the trial court which

found that all of the causes of action asserted in Ahearn's complaint were moot as to him individually, and as such, he lacked standing to assert claims for a similarly situated class. We agree with the trial court that certain claims were rendered moot when, after Ahearn commenced litigation but before a class was certified, the Mayo Clinic of Jacksonville and Mayo Clinic of Florida (collectively "Mayo Clinic") waived Ahearn's balance owed to Mayo Clinic and offered to pay attorney's fees. However, we do not agree that the claim for declaratory and injunctive relief by Ahearn as an allegedly aggrieved party under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.211(1), Florida Statutes, was extinguished by the Mayo Clinic's actions. We therefore reverse that portion of the final summary judgment.

## Background and the Complaint

On September 14, 2013, Ahearn received emergency medical treatment at the Mayo Clinic in Jacksonville. Because he was not covered by health insurance or any governmental healthcare program, Ahearn was personally billed $5,953.26 for the treatment he received. On December 23, 2013, Ahearn, through counsel, filed a complaint raising four causes of action premised in the allegations that Mayo Clinic charged him and other uncovered patients rates in excess of the reasonable value of the services provided and substantially higher than rates Mayo

2

Clinic charges those patients covered by insurance or a governmental healthcare program.[1]

On March 14, 2014, Mayo Clinic, while continuing to deny fault, informed Ahearn that it was waiving the $5,623.26 which Ahearn still owed for the treatment following his payment of $330.00.[2]  Mayo Clinic then moved for summary judgment and agreed to pay Ahearn's attorney's fees and costs, or allow the trial judge to assess them if an agreement could not be reached.  At no time before the final summary judgment issued did Ahearn attempt to certify the class pursuant to rule 1.220(d), Florida Rules of Civil Procedure.

## Summary Judgment and Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings and summary evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fla. R. Civ. P. 1.510(c).  On an appeal of the entry of summary judgment "[w]e view the facts in a light most favorable to the nonmoving party and conduct a de novo

---

[1] The final summary judgment did not address whether there was a cause of action arising out of such allegations.  Mayo Clinic filed a motion to dismiss which argued that the allegation of disparate billing rates does not give rise to a cause of action.  Following entry of the final summary judgment, the trial court denied as moot Mayo Clinic's motion to dismiss.  We do not address the issue of whether the allegations give rise to any cause of action.

[2] Ahearn has not alleged that the $330.00 which he paid was an unreasonable amount.

review of such a judgment." <u>Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass'n, Inc.</u>, 127 So. 3d 1258, 1268 (Fla. 2013).

**Breach of Contract Count**

Ahearn's first count was for breach of contract. As to Ahearn individually, this became moot upon Mayo Clinic's waiver and agreement to pay attorney's fees. "An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect." <u>Godwin v. State</u>, 593 So. 2d 211, 212 (Fla. 1992) (citing <u>DeHoff v. Imeson</u>, 153 Fla. 553, 15 So. 2d 258 (1943)). On appeal, Ahearn raises the possibility that he might face some unspecified tax liability based on Mayo Clinic's waiver of the balance of the bill. However, he did not assert any claim below for possible tax liability or attempt to amend his complaint to assert such a claim. Since Ahearn did not plead these special damages, they are not recoverable. <u>See</u> <u>Precision Tune Auto Care, Inc. v. Radcliffe</u>, 804 So. 2d 1287, 1292 (Fla. 4th DCA 2002) ("Evidence of special damages is inadmissible if those damages are not pled in the complaint."); <u>see also</u> Fla. R. Civ. P. 1.120(g).

Additionally, the agreement by Mayo Clinic to pay reasonable attorney's fees and costs, or submit the issue to the trial judge, made the fees and costs issue moot. <u>See</u> <u>Ramon v. Aries Ins. Co.</u>, 769 So. 2d 1053 (Fla. 3d DCA 2000). In discussing whether an adjudication on the merits was complete even though a

4

determination of the amount of attorney's fees due remained, the United States Supreme Court has stated,

> As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action.

Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988).

As no further relief could be granted to Ahearn individually on the breach of contract claim, it was therefore appropriate to grant summary judgment as to Ahearn individually on that count. See Cox v. CSX Intermodal, Inc., 732 So. 2d 1092 (Fla. 1st DCA 1999). "A moot case generally will be dismissed." Godwin v. State, 593 So. 2d at 212.

Ahearn asserts that even if the breach of contract cause of action as to him individually was rendered moot by the actions of Mayo Clinic, he still had standing to assert breach of contract as a class representative. Ahearn contends that Mayo Clinic should not benefit from its action of "picking off" a putative class representative. Ahearn cites to various federal cases to support his proposition.[3]

---

[3] Appellant cited in support of his argument Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081 (9th Cir. 2011); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239 (10th Cir. 2011); and Stein v. Buccaneer Ltd. P'ship, 772 F.3d 698 (11th Cir. 2014). He acknowledged that Damasco v. Clearwire Corp., 662 F.3d 891 (7th Cir. 2011), did not support his position. We note that after oral argument was completed in this cause, Damasco was overruled by Chapman v. First Index, Inc., 796 F.3d 783 (7th

5

A majority of federal cases seems to support Ahearn's argument that a defendant cannot "pick off" a putative class representative by rendering moot the individual claim, even if the class has not yet been certified. However, we are compelled to follow Florida Supreme Court precedent which sets forth a bright-line rule. In Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 116 (Fla. 2011), the Court held before a class can be certified the putative class representative must have standing and "[t]o satisfy the standing requirement for a class action claim, the class representative must illustrate that a case or controversy exists between him or her and the defendant, and that this case or controversy will continue throughout the existence of the litigation." In Sosa, the putative class representative had an existing case or controversy because he had a claim for an actual injury. Id. at 117. Since Ahearn no longer has a claim for individual damages for breach of contract, standing to serve as a class representative on that count is lacking as he has no case or controversy as to that claim.

Admittedly, Sosa did not involve the picking off of a putative class representative. However, other Florida district courts of appeal faced with the issue have held that if the claim of the putative class representative is extinguished before class certification, then the putative representative cannot bring a claim on behalf of a class. For instance, in Taran v. Blue Cross Blue Shield of Florida, Inc.,

Cir. 2015).

685 So. 2d 1004 (Fla. 3d DCA 1997), plaintiffs, individually and as putative class representatives, brought statutory claims for allegedly being charged excessive health insurance premiums. After suit was filed, Blue Cross issued refunds to the plaintiffs, thereby extinguishing their individual causes of action and picking them off. Id. at 1007. "[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class." Id. at 1006 (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 675, 38 L. Ed. 2d 674, 682 (1974)) (footnote and citations omitted). See also Chinchilla v. Star Cas. Ins. Co., 833 So. 2d 804 (Fla. 3d DCA 2002); Graham v. State Farm Fire & Cas. Co., 813 So. 2d 273 (Fla. 5th DCA 2002); Syna v. Shell Oil Co., 241 So. 2d 458 (Fla. 1970).[4]

## **Implied Covenant of Good Faith and Fair Dealing**

Ahearn's second count was for breach of the implied covenant of good faith and fair dealing. "Florida contract law does recognize an implied covenant of good faith and fair dealing in every contract." QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So. 3d 541, 548 (Fla. 2012). However, "a duty of good faith must relate to the performance of an express term of the contract and is not an

---

[4] "Picking off" the class representative after certification of the class does not deprive the class representative of standing to continue the class action. Allstate Ind. Co. v. De La Rosa, 800 So. 2d 245 (Fla. 3d DCA 2001).

7

abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." Hospital Corp. of Am. v. Florida Med. Ctr., Inc., 710 So. 2d 573, 575 (Fla. 4th DCA 1998).

Since Ahearn's individual breach of contract claim was extinguished, any claim for breach of the implied covenant of good faith and fair dealing is also extinguished. See Insurance Concepts & Design, Inc. v. Healthplan Services, Inc., 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001) ("[A] claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached."). Likewise, since Ahearn's individual claim was extinguished before a class was certified, under Sosa and Taran, Ahearn cannot purport to represent the class on claim of breach of the implied covenant of good faith and fair dealing without having a case or controversy of his own.

## Florida Deceptive and Unfair Trade Practices Act Claim

Ahearn's third count alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), sections 501.201 through 501.213, Florida Statutes. In that count, Ahearn sought monetary damages, and declaratory and injunctive relief. Although combined in one count, these allegations implicate two separate paragraphs of FDUTPA, each of which requires separate analysis.

8

Section 501.211(2), Florida Statutes, provides in part, "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs." As is the case with Ahearn's breach of contract claim, his claim under section 501.211(2) for damages was made moot when Mayo Clinic waived his balance and agreed to pay attorney's fees and costs. Since he has no claim for actual damages, and only the amount of fees and costs is left to determine, he has no claim under section 501.211(2). Since he has no individual claim for damages, Ahearn has no standing to sue on behalf of a class for damages under section 501.211(2). See Baptist Hosp. Inc. v. Baker, 84 So. 3d 1200 (Fla. 1st DCA 2012) (holding lack of actual injury by class representative precluded class action for damages under section 501.211(2)).

As to Ahearn's claim in count three for declaratory and injunctive relief under FDUTPA, such claims are governed by section 501.211(1), which provides,

> [w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

The term "aggrieved" is not defined in FDUTPA. Mayo Clinic contends that "aggrieved" has the same meaning as "harmed," "adversely affected," or "suffered damages." Such an argument is unpersuasive given the Legislature's use

9

of the distinctive wording of subsections (1) and (2) of section 501.211. As indicated, subsection (1) affords declaratory relief to "anyone aggrieved" by a violation of FDUTPA. On the other hand, subsection (2) provides that a person may recover "actual damages" for a "loss as a result of a violation" of FDUTPA. "It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis." State v. J.M., 824 So. 2d 105, 109 (Fla. 2002). "[L]egislative intent may be discerned from the Legislature's election to use different words to convey different meanings within a statute." Dep't of Revenue v. Central Dade Malpractice Trust Fund, 673 So. 2d 899, 901 (Fla. 1st DCA 1996). "[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § 25, p. 170 (2012).

Since it is presumed that the Legislature intentionally used different terminology in subsections (1) and (2), the question becomes how to define these terms. Black's Law Dictionary (10th ed. 2014) defines "aggrieved" as "1. (Of a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights. 2. (Of a person) angry or sad on grounds of perceived unfair treatment."[5] The first definition in Black's would be

---

[5] The Merriam-Webster Online Dictionary defines aggrieved as "feeling

10

synonymous with damaged or suffered a loss.  If the Legislature intended such, it would have said "suffered a loss" or "damaged" based on the text of 501.211(2).  The second definition in <u>Black's</u> is more consistent with the meaning of aggrieved in the context of the statute.  It is this meaning we adopt as the meaning of "aggrieved" under section 501.211(1).

This definition of "aggrieved" as being more expansive than "damaged" or "suffered a loss" is consistent with cases from this and other courts analyzing FDUTPA.  In <u>Davis v. Powertel, Inc.</u>, 776 So. 2d 971, 975 (Fla. 1st DCA 2000), we did not precisely define "aggrieved" but held,

> it follows that an aggrieved party may pursue a claim for declaratory or injunctive relief under the Act, even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice.[6]

Clearly, <u>Davis</u> construed "aggrieved" to be broader than "suffered a loss." In <u>Davis</u>, Judge Webster wrote a concurring opinion and expressed concern that the expansive view of the meaning of aggrieved and broad standing allowed under this provision of FDUTPA provided "the potential for mischief."  <u>Id</u>.  But Judge Webster felt "compelled by the remarkably broad language of the Florida Deceptive and Unfair Trade Practices Act" to reverse.  <u>Id.</u>  Judge Webster further

---

resentment at having been unfairly treated."  Merriam-Webster, http://www.merriam-webster.com (last visited August 20, 2015).  This definition is consistent with the second definition in <u>Black's</u>.

[6] We note that the trial court was not provided <u>Davis</u> by either of the parties below.

11

noted that if the <u>Davis</u> court was giving too broad a reading of FDUTPA, the Legislature could always remedy the problem. In the over fourteen years since <u>Davis</u> was decided, the Legislature has not limited the definition of "aggrieved" in section 501.211(1).

In <u>Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.</u>, 123 So. 3d 1149 (Fla. 5th DCA 2012), the Fifth District Court of Appeal was faced with the question of whether an aggrieved party had to suffer monetary damages to be able to maintain an action for an injunction under section 501.211(1). It was alleged that Timeshares Direct used stolen information from Wyndham to solicit owners of Wyndham timeshares to use Timeshares Direct's services. <u>Id.</u> at 1150. Similar to the instant case, the trial court ruled in <u>Wyndham</u> that because Wyndham could not prove actual damages on its FDUTPA claims, injunctive relief under FDUTPA was precluded as a matter of law. <u>Id.</u> at 1151. In reversing the trial court, our sister court reviewed the purpose of FDUTPA and held, as we hold here, that "regardless of whether an aggrieved party can recover 'actual damages' under section 501.211(2), it may obtain injunctive relief under section 501.211(1)." <u>Id.</u> at 1152 (citing <u>Del Monte Fresh Produce Co. v. Dole Food Co., Inc.</u>, 136 F. Supp. 2d 1271, 1292-93 (S.D. Fla. 2001), and <u>Big Tomato v. Tasty Concepts, Inc.</u>, 972 F. Supp. 662, 664 (S.D. Fla. 1997)). Furthermore, in <u>Kelly v. Palmer, Reifler, & Assocs., P.A.</u>, 681 F. Supp. 2d 1356 (S.D. Fla. 2010), the federal district court held

12

that a party is aggrieved for purposes of section 501.211(1) even though the offending conduct was voluntarily ceased.

We do not attempt here to establish a bright-line test as to when a person is or is not aggrieved under FDUTPA. We note that for someone to be aggrieved, the injury claimed to have been suffered cannot be merely speculative. Macias v. HBC of Florida, Inc., 694 So. 2d 88 (Fla. 3d DCA 1997). It should be emphasized the plain language of section 501.211(1) offers declaratory and injunctive relief against a party "who has violated, is violating, or is otherwise likely to violate this part." (Emphasis added). Thus, the deliberate use of the past tense establishes that the offending conduct need not be continuing in order to seek declaratory or injunctive relief. But, an "aggrieved" person for purposes of section 501.211(1) nevertheless must be able to demonstrate some specific past, present, or future grievance, otherwise the statute would have no meaning in violation of settled rules of statutory construction. See Unruh v. State, 669 So. 2d 242 (Fla. 1996) (explaining courts should avoid reading a statute in a manner which renders part of the statute meaningless).

We are guided by the definition of "aggrieved" in the context of "standing to enforce local comprehensive plans through development orders," which is contained in section 163.3215(2), Florida Statutes. This statute provides in pertinent part,

13

> As used in this section, the term "aggrieved or adversely affected party" means any person or local government that will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan, including interests related to health and safety, police and fire protection service systems, densities or intensities of development, transportation facilities, health care facilities, equipment or services, and environmental or natural resources. **The alleged adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons**.[7]

(Emphasis added).

Therefore, a material issue of fact remains as to whether Ahearn was "aggrieved" under section 501.211(1). Since Ahearn individually has a case or controversy as to his claim for declaratory and injunctive relief under section 501.211(1), he may also attempt to assert a claim as class representative for this relief pursuant to Sosa and Taran. We do not address whether certification of the class is appropriate per rule 1.220, Florida Rules of Civil Procedure, as this issue is not before us. The summary judgment granted by the trial court as to count three of the complaint is reversed as to the claims for declaratory and injunctive relief both individually and as putative class representative.

**Declaratory and Injunctive Relief Under Chapter 86**

---

[7] In Nassau County v. Willis, 41 So. 3d 270 (Fla. 1st DCA 2010), we found standing under section 163.3215(2) where a party's interest exceeded the interest of the general public.

14

Without specifically reciting statutory authority, count four asserted a claim for a declaratory judgment and also sought injunctive relief to enforce the anticipated declaratory judgment. Although the remedy sought is identical to a claim for declaratory and injunctive relief under FDUTPA in count three, we analyze count four under Chapter 86, Florida Statutes, which authorizes courts to issue declaratory judgments. See § 86.011, Florida Statutes.

We agree with the trial court that the lack of a present controversy precludes Ahearn from having standing to seek a declaratory judgment and injunctive relief under Chapter 86. As the Florida Supreme Court has stated,

> Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

May v. Holley, 59 So. 2d 636, 639 (Fla. 1952).

Here, there is no actual, present need for a declaration under Chapter 86. Since Mayo Clinic waived the balance owed and agreed to pay fees and costs, no right of Ahearn is dependent on the facts or law applicable to the facts. Ahearn no

15

longer has an actual, present, adverse, and antagonistic interest to Mayo Clinic. See Martinez v. Scanlan, 582 So. 2d 1167, 1171 (Fla. 1991) (explaining that to seek a declaratory judgment there "must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction"). Given the lack of an actual controversy, any declaration under Chapter 86 would be an advisory opinion, which this Court has repeatedly stated is inappropriate. See Apthorp v. Detzner, 162 So. 3d 236 (Fla. 1st DCA 2015); see also McCarty v. Myers, 125 So. 3d 333 (Fla. 1st DCA 2013). Again, since Ahearn has no individual case or controversy, he cannot assert a claim as class representative. Sosa.

## Conclusion

For the reasons set forth above, we affirm the final summary judgment as to the breach of contract count, the breach of implied covenant of good faith and fair dealing count, the actual damages portion of the FDUTPA count, and the declaratory judgment count under Chapter 86, Florida Statutes. We reverse the final summary judgment as to FDUTPA count to the extent it seeks declaratory and injunctive relief for Ahearn individually and as a putative class representative as an allegedly aggrieved person.

AFFIRMED in part, REVERSED in part, and REMANDED.

SWANSON, J., CONCURS, ROWE, J., CONCURS IN RESULT IN PART AND DISSENTS IN PART WITH OPINION.

ROWE, J., Concurring in result in part and dissenting in part.

I concur with the majority's conclusions that the trial court properly granted summary judgment because Ahearn's individual and class action claims for breach of contract, for breach of the implied covenant of good faith and fair dealing, for money damages pursuant to FDUTPA, and for declaratory and injunctive relief pursuant to chapter 86 were moot. However, contrary to the majority's holding, I would also conclude that Ahearn's individual and class actions claims for declaratory and injunctive relief pursuant to FDUTPA were barred because Ahearn cannot establish that he is an aggrieved party pursuant to section 501.211(1), Florida Statutes.

FDUTPA authorizes private causes of action for both injunctive and declaratory relief and for actual damages. Section 501.211 provides:

> (1) Without regard to any other remedy or relief to which a person is entitled, anyone *aggrieved* by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

> (2) In any action brought by a person who has *suffered a loss* as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

§ 501.211, Fla. Stat. (2013) (emphasis added).

17

By the express terms of the statute, plaintiffs seeking actual damages under FDUTPA must allege they have "suffered a loss," while plaintiffs seeking injunctive and declaratory relief under the act need only demonstrate that they are "aggrieved." In comparing the terms "suffered a loss" and "aggrieved," as those terms are used in FDUTPA, the majority concludes that a plaintiff seeking injunctive/declaratory relief need not demonstrate that they have been adversely affected or harmed. Citing Black's Law Dictionary, the majority concludes that the first definition of the term "aggrieved," which includes persons whose rights are adversely affected or who have been harmed, is synonymous with the term "suffered a loss" as that term is used in FDUTPA's damages provision. Thus, the majority posits that an "aggrieved" party seeking injunctive/declaratory relief under FDUTPA must be someone other than a party who has been harmed or whose rights have been adversely affected. Turning to the second definition offered by Black's, the majority concludes that the term "aggrieved," as it is used in FDUTPA's injunctive/declaratory provision, must refer to a party who is "angry or sad on grounds of perceived unfair treatment." Notwithstanding the differing terminology used by the Legislature in the two provisions, I cannot agree with the majority's construction of the term "aggrieved" as it is used in FDUTPA. This construction is at odds with the plain language of the statute and the case law interpreting both the damages and injunctive/declaratory provisions of FDUTPA.

18

The plain language of FDUTPA limits relief under the damages provision to those plaintiffs that can establish **actual** damages. The relief provided under the injunctive/declaratory provision of the statute is far broader and is available to any plaintiff "aggrieved" by a violation of FDUTPA. See Wyndham Vacations Resorts, Inc. v. Timeshares Direct, Inc., 123 So. 3d 1149, 1152 (Fla. 5th DCA 2011) ("[R]egardless of whether an aggrieved party can recover 'actual damages' under section 501.211(2), it may obtain injunctive relief under section 501.211(1)."); Smith v. Wm. Wrigley Jr. Co., 663 F.Supp.2d 1336, 1339 (S.D. Fla. 2009) (concluding that FDUTPA makes "declaratory and injunctive relief available to a broader class of plaintiffs than could recover damages.") (citations omitted). Accordingly, it follows that a plaintiff who suffers a loss and sustains actual damages as a result of a violation of FDUTPA may seek relief under both the damages provision and under the injunctive/declaratory provision.

The majority's conclusion that "suffered a loss," as that term is used under the damages provision, is synonymous with being adversely affected or harmed ignores the fact that many adversely affected parties may not seek damages under FDUTPA because they are unable to allege and prove **actual** damages. For example, plaintiffs suing under the damages provision of FDUTPA may not recover consequential damages. Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008) (holding that actual damages under FDUTPA do not

19

include consequential damages, such as repair or resale damages); accord Ft. Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So. 2d 311, 314 (Fla. 4th DCA 1998) (holding that consumers are not entitled to recovery of consequential damages); Urling v. Helms Exterminators, Inc., 468 So. 2d 451, 454 (Fla. 1st DCA 1985) (holding that FDUTPA "entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services."). Neither may a FDUTPA plaintiff recover diminution in value damages or stigma damages under section 501.211(2). See Rollins, Inc. v. Butland, 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006) (holding that actual damages under FDUTPA do not include consequential damages, diminution in value damages, or stigma damages). Also barred from recovery under the damages provision of FDUTPA are plaintiffs seeking nominal damages. City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (holding that the damages provision of FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment). In each of these instances, the plaintiffs have been adversely affected and/or have suffered losses and yet are barred from recovery under the damages provision set forth in section 501.211(2).

20

However, despite their inability to recover their losses under the damages provision of FDUTPA, parties suffering losses in the form of consequential damages, nominal damages, diminution in value damages, and other non-recoverable damages remain "aggrieved" within the meaning of FDUTPA and are not barred from seeking injunctive or declaratory relief pursuant to section 501.211(1). See Wyndham, 123 So. 3d at 1152 (holding that injunctive relief was available to an aggrieved party even though the aggrieved party had not suffered actual damages); Klinger v. Weekly World News, Inc., 747 F.Supp. 1477, 1480 (S.D. Fla. 1990) (holding that a professional writer who alleged a lost business opportunity as a result of newspaper's alleged deceptive acts stated "an injury sufficient" to permit the pursuit of injunctive relief under FDUTPA). Contrary to the argument presented by the majority, I do not believe that the Legislature's use of the term "aggrieved" was intended to relieve plaintiffs seeking injunctive or declaratory relief under FDUTPA from demonstrating that they were adversely affected or harmed; rather, the use of the term was intended to expand the class of plaintiffs authorized to bring suit under FDUTPA beyond those suffering actual damages.

Notwithstanding the breadth of the remedies available under FDUPTA, a plaintiff seeking relief must demonstrate that they are in "a position to complain" and that a "violation has occurred, is now occurring, or is likely to occur in the

21

future." Davis v. Powertel, Inc., 776 So. 2d 971, 975 (Fla. 1st DCA 2000). Here, Ahearn cannot allege that he is in a position to complain because of the mootness of his claim.

In Florida, every plaintiff must demonstrate that their "case involve[s] a real controversy as to the issues presented." Dep't of Revenue v. Kuhnlein, 646 So. 2d 717, 721 (Fla. 1994); Apthorp v. Detzner, 162 So. 3d 236, 240 (Fla. 1st DCA 2015) (holding that a plaintiff must "allege a present controversy based on articulated facts which demonstrate a real threat of immediate injury" to invoke the jurisdiction of the court). A case presents no actual controversy when the issues have ceased to exist and should be dismissed as moot. Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992). Montgomery v. Dep't of Health & Rehab. Servs., 468 So. 2d 1014, 1016 (Fla. 1st DCA 1985) ("Mootness has been defined as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citing Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Here, Ahearn's standing to bring suit ceased when Mayo Clinic waived the remainder of Ahearn's medical bill and agreed to pay his attorney's fees and costs. Following the cancellation of his debt and payment of his fees and costs, Ahearn's claim became moot and he was no longer in a position to complain. Thus, Ahearn is not an aggrieved party within the

22

meaning of section 501.211(1), and he may not pursue injunctive or declaratory relief under FDUTPA. For these reasons, I would affirm the final order of summary judgment in all respects.